2020 IL App (1st) 180621-U

No. 1-18-0621

Order filed September 29, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 5319 |
| | ) | |
| JONATHON CARTER, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The judgment of the circuit court is affirmed as to the defendant's sentence, where the record establishes that the trial court properly considered defendant's mitigating evidence in imposing the eight-year prison sentence. However, we remand this case to the circuit court so that the defendant may move to correct the mittimus, which lists a conviction that the circuit court expressed on the record should have been merged.

¶ 2    Following a bench trial, defendant Jonathon Carter was found guilty of attempt aggravated

arson (720 ILCS 5/8-4(a) (West 2016); 720 ILCS 5/20-1.1 (West 2016)) and sentenced to eight

years' imprisonment.[1] On appeal, defendant argues the trial court failed to properly consider certain mitigating factors in sentencing him, including his mental health history and rehabilitative potential. We affirm and remand with directions to correct the mittimus.

¶ 3    The State charged defendant with one count each of aggravated arson and residential arson, stemming from an incident which occurred at a residential building on South Peoria Street in Chicago on March 11, 2017. Prior to trial, defense counsel requested a Behavioral Clinical Examination (BCX) to evaluate defendant's fitness to stand trial. Defendant informed the court that he had been hospitalized as a part of his probation for a prior federal conviction and had previously been medicated. He had stopped taking the medication "because it slow[s] [him] down." The court ordered the BCX and transferred defendant to Cermak Hospital for treatment. The next court date, the court stated defendant was evaluated for fitness, and two evaluating doctors found him fit for trial.

¶ 4    At trial, Victoria Harden testified that she was defendant's cousin, and she was with him at her home the night of March 10 and early morning hours of March 11, 2017. Harden lived on the first floor of the Peoria address, a two-flat, and she had family who lived on the second floor. Harden allowed defendant to stay in the apartment that night. When she called him to "make a pallet" on the floor, he "spazzed out," yelled, acted upset and angry, and "wasn't his self." Defendant stated "[o]h, I'm going to set this mother f***** on fire." Harden did not believe defendant would "really do it." She described defendant as a "protector" to their family, commenting that he was drunk and high at the time and not a bad person. Harden's children, the

---

[1] Defendant's first name is spelled "Jonathan" and "Jonathon" in the record on appeal. The common law record shows "Jonathon" is the correct spelling.

father of her children, who was using a wheelchair at the time, and the other people living in the house were present when defendant was acting this way.

¶ 5     After defendant made the comment, he left the apartment. A short time later, Harden was in the kitchen with her six-year-old daughter, who alerted her to something. Harden looked out the window and saw flames. Her cousin told her the side of the building was on fire. They focused their efforts on getting the children out, along with Harden's cousin who had cerebral palsy. When Harden came outside, the police and fire department were at the scene, attempting to restrain defendant. She noticed the front porch was "scorched" and identified photographs of the condition of the porch. On cross-examination, Harden stated she never saw defendant set any fires. She saw him "tussling" with her children's father, who was trying to prevent defendant from throwing an antifreeze can with gasoline into the apartment. Harden saw fire on the side of the building, but did not see how the cement in the front of the building became scorched.

¶ 6     Chicago Fire Department captain Anthony Ferenzi testified he responded to a fire at a two-flat brick building on South Peoria Street on March 11, 2017, at approximately 4:00 a.m. When he arrived at the scene, he saw a wet spot which smelled like gasoline on the sidewalk and stairs leading to the building. He also saw a lighter in the wet spot on the sidewalk. Ferenzi smelled an odor of smoke, and "[t]he entire area had an odor of gasoline." He then observed defendant struggling with a man in a wheelchair over a "yellow can" on the landing. Ferenzi approached the men to retrieve the canister, and defendant "swung" at him with a closed fist. Other members of the Chicago Fire Department subdued defendant, and Ferenzi retrieved the canister, which contained "gasoline or accelerant." Ferenzi identified photographs of the scene and the yellow

canister, which were admitted into evidence. On cross-examination, Ferenzi stated he did not see any fire or smoke at the scene.

¶ 7    Daniel Solis testified he was a fireman who responded to the Peoria address on March 11, 2017. Upon entering the front of the building, he smelled smoke, and observed defendant struggling with a man in a wheelchair over control of a yellow plastic container. When Ferenzi attempted to remove the "gas can" from the men, defendant attempted to strike him, so Solis "bear hugged him and took him down the stairs" until the police arrived.

¶ 8    Chicago police officer Hector Flores testified he responded to an arson call at the Peoria address, and activated his body worn camera when he arrived at the scene. The State published Flores's body camera footage. The footage shows firemen restraining a man outside a brick building and police officers' efforts to subdue the man who is acting aggressively toward them. On cross-examination, Flores stated his understanding when he was at the scene was that "no fire was actually set."

¶ 9    The parties next proceeded by way of stipulation. Specified forensic scientists would testify that a yellow bottle recovered from the front steps of the Peoria address contained liquid which was determined to be gasoline, and had a stain on it which was determined to be defendant's blood.

¶ 10    The parties also stipulated to the foundation of video clips from a gas station on South Halsted Street and published the videos. The clips show a man dressed in a black patterned shirt and green jacket drive to the station, rummage in his trunk, pull out a light colored object, pay inside the store, fill the item at the gasoline pump, and drive from the station. The parties further stipulated to an arrest photo which showed defendant wearing a black patterned shirt. The pattern matches the shirt worn by the man at the gas station.

¶ 11 The court found defendant guilty of the lesser included offenses of attempt aggravated arson and attempt residential arson. In ruling, the court commented that defendant threatened to light a fire and attempted to do so, but "fortunately" for the people present in the building, including the children, "the building did not catch on fire." However, the court noted "there was an attempt, out of some rage, to burn this structure down with people inside." The court stated the attempt residential arson count merged into the attempt aggravated arson count.

¶ 12 The court denied defendant's motion for a new trial, and the case proceeded to sentencing. Defendant's presentence investigation report (PSI) showed he had prior convictions in Iowa for a DUI in 2007 (48 hours "jail") and possession with intent to deliver in 2008 (16 months "federal time" and 3 months "custody" after his supervised release was revoked). In the PSI, defendant stated he grew up on the south side of Chicago. He described his childhood as "fair" with no abuse or neglect. Defendant did "not remember nothing about charges." Defendant had two children, one of whom lived in Cedar Rapids, Iowa, and the other lived in Chicago. Defendant was diagnosed with bipolar disorder and schizophrenia at the age of 13-14, and was prescribed Abilify at the Cook County Jail. He drank alcohol every day, and last had alcohol on the day of his arrest. Defendant stated he used ecstasy the night before the arrest, and was not sure how many pills he took, but usually would take one pill.

¶ 13 In aggravation, the State highlighted defendant's prior Iowa criminal history. The State recommended that defendant be sent to the Department of Corrections, arguing that while defendant did not cause much damage, it "could have gotten out of hand." The State highlighted defendant's premeditated actions in going to the gas station to fill up a gas can, trying to light "things" on fire to the point where a witness could see the flames, and subsequently struggling

with a man who was trying to get the gas can away from him. Further, the police body camera footage showed defendant's behavior with the police and fire department. The State requested more than the minimum sentence.

¶ 14    In mitigation, defense counsel argued defendant did not have a substantial background and had nothing in his background "like this." Defense counsel stated as the incident took place at defendant's cousin's house, the situation was hard for the family, but the family did support him, and his cousin expressed concern for his welfare. Counsel stated defendant had a history of mental illness, schizophrenia and bipolar disorder, but was determined fit to stand trial after the evaluation. According to counsel, "[i]t did not look like [defendant] was having any active episodes, but he struggled with that, and it also appears he struggles with alcohol abuse." Defense counsel noted this was an attempt and nobody was injured, and asked for leniency from the court. Defense counsel stated "this was a bad night," and defendant was drinking and did not plan his actions in advance.

¶ 15    In allocution, defendant told the court he was at a loss for words. When the court noted that defendant "could have burned up a whole neighborhood," defendant apologized and stated that "it's like I did it intentionally, but I really don't know what happened."

¶ 16    The court reiterated that the "counts" merged into the attempt aggravated arson count and sentenced defendant to eight years' imprisonment.[2] The court stated defendant's setting the fire "wasn't an impulse" because he had to go to the gas station "to prepare to do" it, and it was

---

[2] The mittimus shows 8-year sentences for each count, to be served concurrently. However, the court stated at the conclusion of trial and at sentencing that the attempt residential arson count merged into the attempt aggravated arson count. The court's oral pronouncement controls. See *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87. Therefore, defendant was sentenced on only the attempt aggravated arson count.

fortunate the only damage was to the property and "what might have happened to people didn't get any worse." The court denied defendant's motion to reconsider sentence.

¶ 17    On appeal, defendant argues his sentence is excessive because the trial court failed to properly consider the mitigating factors of defendant's mental health history, the fact that defendant's actions were "out of character" for him, and his rehabilitative potential. Defendant requests that we reduce his sentence to the statutory minimum or remand the issue for resentencing.

¶ 18    A trial court's sentencing decision is reviewed under the abuse of discretion standard. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A reviewing court will find an abuse of discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id*. The trial court has broad discretion in imposing a sentence, and its sentencing decisions are afforded great deference, because the trial judge "observed the defendant and the proceedings," and is in a better position to weigh factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id*. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). However, we must interpret sentencing laws "in accord with common sense and reason" and not merely rubber stamp the trial court's judgment, so as to "avoid an absurd or unduly harsh sentence." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 1.

¶ 19    A sentence that falls within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In this case, defendant was convicted of attempt aggravated arson. 720 ILCS 5/8-4(a) (West 2016); 720 ILCS 5/20-1.1 (West 2016). The sentence for this Class 1 offense ranges from 4 to 15 years. 720 ILCS 5/20-1.1(b) (West 2016); 720 ILCS 5/8-4(c)(2) (West

2016); 730 ILCS 5/5-4.5-30(a) (West 2016). Therefore, defendant's eight-year sentence is presumed proper. *Knox*, 2014 IL App. (1st) 120349, ¶ 46.

¶ 20     Nevertheless, defendant argues the trial court abused its sentencing discretion by failing to adequately weigh certain mitigating factors, specifically defendant's mental health history, the fact that defendant's actions were "out of character," and his rehabilitative potential as shown by his family support and lack of significant criminal background.

¶ 21     A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I § 11*; People v. Neasom*, 2017 IL App (1st) 143875, ¶ 48. Although a trial court must consider all factors in aggravation and mitigation, the seriousness of the offense, rather than mitigating evidence, is the most important factor in sentencing. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94. The trial court is presumed to consider "all relevant factors and any mitigation evidence presented" (*People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor (*People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). Where, as here, a defendant argues that the court failed to properly consider certain factors, the defendant "must make an affirmative showing that the sentencing court did not consider relevant factors.*" People v. Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 22     Defendant has not made such a showing. While the trial court cannot give mitigating evidence no weight by excluding it from consideration, the court " 'may determine the weight to be given' " to that mitigating evidence. *People v. Chapman*, 194 Ill. 2d 186, 252-53 (2000) (quoting *People v. Davis*, 185 Ill. 2d 317, 344 (1998)). Here, defense counsel argued in mitigation that defendant had schizophrenia and bipolar disorder, and "[i]t did not look like he was having

any active episodes, but he struggled with that, and it also appears he struggles with alcohol abuse." Further, the trial court heard Harden testify during trial that defendant was a "protector" to the family and was under the influence of drugs and alcohol at the time of the incident. Defense counsel also argued that defendant had a family who supported him and a lack of a serious criminal background. Further, the PSI showed he had been diagnosed with schizophrenia and bipolar disorder and prescribed Abilify. It also showed he drank alcohol every day, including the day of his arrest, and used ecstasy the night before.

¶ 23    Thus, the mitigating evidence defendant argues on appeal was presented to the trial court and we presume the trial court considered it. *Jackson*, 2014 IL App (1st) 123258, ¶ 53. Defendant makes no affirmative showing otherwise. While the court did not specifically mention defendant's mental health or Harden's testimony regarding his out-of-character behavior, it had no obligation to recite and assign values to those factors. *Perkins*, 408 Ill. App. 3d at 763. Defendant's request that we consider the mitigating evidence in order to find the trial court abused its discretion is merely a request for this court to reweigh the evidence and substitute its judgment for that of the trial court. This we will not do. *Alexander*, 239 Ill. 2d at 213 (where the sentencing court adequately considered the appropriate factors, "the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed those factors differently").

¶ 24    The fact that defendant was not taking his medications and had been using alcohol and ecstasy before the incident is a factor which could be used either in mitigation or in aggravation. See *People v. Ballard*, 206 Ill. 2d 151, 189-190 (2002) ("[T]his court has recognized that 'a history of substance abuse is a double-edged sword at the aggravation/mitigation phase of the penalty

hearing.' ") (quoting *People v. Madej*, 177 Ill. 2d 116, 138 (1997)). The court could have viewed the fact that defendant had chosen not to take his prescribed medication as well as used drugs and alcohol before the incident as evidence that defendant was a danger to others, and accordingly sentenced him above the minimum statutory sentence. Defendant has failed to meet his burden in affirmatively showing that the sentencing court did not consider the relevant factors during sentencing. See *Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 25    As noted above, the seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of other mitigating factors. See *Kelly*, 2015 IL App (1st) 132782, ¶ 94. The evidence here showed defendant obtained an empty canister, filled it with gasoline, and then purposefully poured that gasoline on the front steps of the building where he knew his cousin was home with her children and other family members. He then attempted to throw gasoline into his cousin's apartment, and was only stopped because the man in the wheelchair was able to fight him off until firefighters arrived. As the court stated at sentencing, defendant was not acting out of impulse, and it was fortunate that the damage was to the property "and what might have happened to people didn't get any worse." Given the seriousness of the offense, defendant's eight-year sentence was not excessive.

¶ 26    For the foregoing reasons, we find the trial court did not abuse its discretion in imposing an eight-year prison sentence for attempted aggravated arson.

¶ 27    That said, we note that defendant's mittimus contains a clerical error. Namely, the mittimus reflects two concurrent eight-year sentences for one count of attempt aggravated arson and one count of attempt residential arson, respectively. However, the circuit court expressed on the record that it intended to merge these two counts and only impose a sentence on attempt aggravated arson.

Illinois Supreme Court Rule 472(a)(4) (eff. May 17, 2019) provides that we lack jurisdiction to correct this issue, as the trial court retains jurisdiction to correct at any time "[c]lerical errors in the written sentencing order or other part of the record resulting in a discrepancy between the record and the actual judgment of the court." Nonetheless, Rule 472 also provides that "[i]n all criminal cases pending on appeal as of March 1, 2019," which is the case here, "the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." We therefore remand this case to the circuit court so that defendant may move to correct the clerical error in his mittimus. See *People v. Whittenburg*, 2019 IL App (1st) 163267, ¶ 4 (emphasizing that "defendant must first file a motion in the circuit court requesting the correction of any sentencing errors specified in Rule 472(a)"). We otherwise affirm the judgment of the circuit court.

¶ 28    Affirmed and remanded with directions.