# Illinois Official Reports

## Appellate Court

---

**People v. Jackson, 2014 IL App (1st) 123258**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER JACKSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3258 |
| Filed | November 26, 2014 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions and sentences for the attempted first degree murder of his former girlfriend, the first degree murder of her current boyfriend and home invasion were upheld over his contentions that his trial counsel was ineffective, that evidence of other crimes was improperly admitted, that the sentence to natural life imprisonment was an abuse of discretion and that he was not informed of the 15-year firearm enhancement to the sentence for attempted first degree murder, since defendant could not establish prejudice based on his counsel's alleged ineffectiveness in view of the overwhelming evidence of defendant's guilt, evidence of defendant's recent assaults on his former girlfriend was properly admitted, the sentence to natural life imprisonment fell within the statutory guidelines, and the indictment gave defendant adequate notice of the firearm enhancement of the first degree murder sentence; furthermore, the mittimus for the attempted first degree murder conviction was directed to be corrected to Class X felony. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-19769; the Hon. Timothy Joseph Joyce, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |

Counsel on
Appeal

Michael J. Pelletier and Levi S. Harris, both of State Appellate Defender's Office, and Thomas C. Brandstrader, both of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (John E. Nowak and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion.

## OPINION

¶ 1    In the early morning of September 25, 2008, defendant Christopher Jackson dislodged a bedroom air conditioner, awakening Sulee Gonzalez, his former girlfriend and the mother of his daughter, and her current boyfriend, Robert White. Entering the room, Jackson shot the boyfriend in the head, killing him, and then went on to repeatedly stab Gonzalez. The trial court convicted Jackson of the first degree murder of White, the attempted first degree murder of Gonzalez, and home invasion. Jackson was sentenced to natural life imprisonment for first degree murder, 21 years for attempted first degree murder, and 26 years for home invasion.

¶ 2    Jackson raises four issues on appeal: (i) ineffective assistance of counsel for his trial attorney's alleged failure to investigate his mental health or the location of blood spatters at the crime scene; (ii) the admission of other crimes evidence as inflammatory, nonprobative, and prejudicial; (iii) the abuse of discretion in sentencing him to a term of natural life imprisonment, as both excessive and lacking in adequate consideration of the mitigating factors; and (iv) the State failed to inform Jackson of the 15-year firearm enhancement to the attempted first degree murder sentence, rendering the enhancement void.

¶ 3    We affirm Jackson's conviction and sentence. First, the omission of the DNA evidence constituted a strategic trial decision made by Jackson's counsel and does not support a claim of ineffective assistance of counsel. Additionally, Jackson cannot show prejudice. Next, the other crimes evidence was proximate in time as well as factually similar to the charged conduct and not unduly prejudicial under the circumstances. As for sentencing, the trial court properly considered the mitigating evidence and sentenced Jackson within the statutory mandated guidelines. Finally, Jackson received pretrial notice of the sentencing enhancement because the indictment for first degree murder included the alleged fact used as a basis for the 15-year enhancement, which suffices under the statute.

¶ 4                                    BACKGROUND

¶ 5    Christopher Jackson and Sulee Gonzalez maintained an on-again/off-again relationship from 1999 to July 2008. In 2007, Jackson and Gonzalez lived together with their daughter at

Gonzalez's mother's house, along with other family members. On February 12, 2007, Jackson came home drunk and accused Gonzalez of breaking his windows. Jackson threw items to the ground and struck her. When Jackson packed up his belongings to leave, Gonzalez attempted to remove Jackson's house keys from his keychain. Realizing this, Jackson punched her in the face. Gonzalez reported the incident to the police but did not pursue it further. Jackson and Gonzalez separated in June 2008.

¶ 6 On August 15, 2008, Gonzalez was living in a ground floor apartment with her daughter, her boyfriend, Robert White, and her brother Robert Gonzalez (Robert G.). At about 12:30 a.m., Gonzalez and White were awakened by loud banging on the back door, where Jackson was shouting Gonzalez's name. Jackson pushed aside a panel of an air-conditioning unit located near the back porch and peered into the apartment. Gonzalez instructed her brother to tell Jackson she was not home. Jackson retreated; however, a half hour later he returned and rammed his truck into Gonzalez's parked car. Gonzalez reported the incident to the police and obtained an order of protection. After that, Gonzalez maintained contact with Jackson solely by phone and email.

¶ 7 State's Case

¶ 8 On September 25, 2008, White and Gonzalez were sleeping in their bedroom. Robert G. and a friend were in another room. Around 1 a.m., the sound of the air conditioner crashing onto the floor of their room woke White and Gonzalez. White went to the window, and in seconds, Gonzalez heard gunshots from outside. Gonzalez pulled the covers over her head and screamed. As she pulled back the covers, Jackson turned on the light. She saw Jackson standing at the end of her bed, and, in an instant, Jackson jumped on the bed, choked Gonzalez with one hand, and drew his gun to her head with the other. Jackson told Gonzalez that if he could not have her, no one could, and he pulled the trigger. The gun misfired. Gonzalez attempted to fight Jackson off as he choked her with both hands.

¶ 9 Robert G. and a friend entered the room and saw Jackson with a gun in his hand kneeling on top of Gonzalez. Jackson pointed the gun at the two men and they ran into the hallway. Jackson followed. Gonzalez stayed in the bedroom and kneeled by White, who was unresponsive. Jackson returned to the bedroom, this time wielding a knife, and began to repeatedly stab Gonzalez, while saying, "die, bitch, die."

¶ 10 Meanwhile, Robert G. and his friend ran across the street to the home of Gonzalez's aunt, Pilar Santillanes, and told her what happened. Santillanes entered the apartment, grabbed a skillet from the kitchen, entered the bedroom, and, while Jackson continued to stab Gonzalez, Santillanes beat Jackson about the head with the skillet. After receiving several blows from the skillet, Jackson got on his knees, proclaimed he would kill himself and plunged the knife into his chest. Santillanes told Jackson to shut up and again hit him with the skillet. Jackson stabbed Gonzalez once more in the stomach and left the knife embedded there. Santillanes removed the knife from Gonzalez and tossed it toward the bedroom doorway.

¶ 11 While Santillanes hit Jackson with the skillet, Robert G. and another friend entered the bedroom and tried to stop the attack on Gonzalez. The friend removed her shirt, used it to pick up the bloody knife from the doorway, and tried to stab Jackson. The police arrived and Gonzalez and Jackson were taken to a hospital.

¶ 12 In the kitchen, the police recovered a handgun from atop the stove, with five spent cartridges and one empty cylinder. In the bedroom, there was a skillet and air conditioner on

- 3 -

the floor, a bloody knife in the doorway, and four holes in the wall over the bed, as well as a metal fragment in the baseboard.

¶ 13    Blood found on the knife blade revealed a major human female DNA profile matching Gonzalez's DNA profile and a minor partial DNA profile from which Jackson could not be excluded. Blood from the knife handle revealed a major human female DNA profile matching Gonzalez's DNA profile and a minor DNA profile that matched Jackson, but not White.

¶ 14    The chief medical examiner at the Cook County medical examiner's office testified that White died from two gunshot wounds to the back of his head. There was no evidence of close-range firing. A bullet and two bullet fragments were recovered from the body. A forensic scientist testified that the two bullets were fired from the handgun recovered from Gonzalez's apartment. Gunshot residue tests performed on Jackson's hands revealed he discharged a firearm or had his hands near a discharged firearm.

¶ 15    The State offered evidence regarding the February 12, 2007 and August 15, 2008 incidents as tending to show motive, lack of accident, and intent to commit the specific offense charged.

¶ 16                                    Jackson's Testimony

¶ 17    According to Jackson, on September 25, 2008, Jackson and Gonzalez agreed he would stop by the apartment that evening to get his belongings and give Gonzalez some money. The two agreed he would come around 9 p.m.; however, Jackson listened to the Cubs/Dodgers game and arrived at the apartment closer to 1 a.m. Jackson entered the apartment through the front door and saw Robert G. awake on the couch, with his friend sleeping nearby. Jackson looked into his daughter's room but did not see her. Jackson moved to the kitchen and announced he was there to get his stuff.

¶ 18    Suddenly, the front door opened and three men, Joseph Green, Vincent Patitucci and Clyde Watkins, burst into the apartment and began punching and kicking Jackson. As they were stomping him, the bedroom door opened, and White came out. White grabbed a skillet from the stove and hit Jackson over the head. White took the skillet to the bedroom and came back with a small revolver. The three men encouraged White to shoot Jackson, but the gun did not fire.

¶ 19    Seizing the opportunity, Jackson grabbed the gun and pushed White into the bedroom and onto the bed. Jackson pulled the trigger and fired without aiming. Meanwhile, the three men were beating on him from behind and Jackson fired several more times. The three men left the room, and Jackson dropped the gun. Jackson tried to lift himself up from the floor by leaning on the air-conditioning unit, causing the unit to fall from the window. Jackson, covered in blood, staggered to the kitchen. He saw Gonzalez standing by the stove and grabbed a towel to wipe the blood from his face. He asked Gonzalez, "Why?" as she picked up a knife and attacked him, slicing his forearm and stabbing his chest. Jackson grabbed the knife and swung it wildly toward Gonzalez. He felt someone hit him in the head with a blunt object and passed out. He awoke in a hospital cuffed to the bed.

¶ 20                                    State's Rebuttal

¶ 21    In rebuttal, the State presented evidence that Joseph Green was in jail in Wisconsin on the night of the incident. Additionally, Vincent Patitucci was out with friends during the incident and never entered Gonzalez's apartment or saw Jackson the night of the murder.

¶ 22                                         Posttrial

¶ 23      The trial court found Jackson guilty of first degree murder, attempted first degree murder and home invasion. The trial judge described Jackson's testimony as "fantastically unworthy of belief" and Gonzalez's testimony as "compelling" and "very much worthy of belief."

¶ 24      After the verdict, Jackson retained a new attorney. Jackson's presentencing investigation alleged potential psychological issues. The trial court ordered Jackson be given a behavioral clinical examination (BCX) to test his fitness for trial and sentencing. The BCX report indicated that Jackson was fit to stand trial and for sentencing. Although Jackson was taking some psychotropic medication, the BCX indicated he did not require medication to maintain his fitness.

¶ 25      At the hearing on Jackson's posttrial motion, Jackson alleged ineffective assistance of counsel. His trial attorney testified that Jackson wanted DNA testing performed on the bloodstains in the apartment; however, a tactical decision was made not to do so because the risk of a negative outcome from the forensic testing outweighed any potential benefit. His attorney also testified that the results would not have been particularly probative in his defense. The trial court denied Jackson's motion.

¶ 26      The trial court sentenced Jackson to natural life imprisonment for first degree murder (720 ILCS 5/9-1(a)(1) to (3) (West 2008)), 6 years plus a 15-year enhancement for attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)), and 6 years plus a 20-year enhancement for home invasion (720 ILCS 5/12-11(a)(4) (West 2008)). Jackson filed a motion to reconsider the sentence. The trial court denied Jackson's motion, and this timely appeal followed.


¶ 27                                         ANALYSIS
¶ 28                              Ineffective Assistance of Counsel

¶ 29      Jackson asserts that his trial attorney provided constitutionally ineffective assistance because he (i) knew or should have known Jackson was on psychotropic medication and had access to information that should have been investigated, and (ii) failed to have DNA testing performed on the blood from the incident, which would have assisted in corroborating Jackson's version. We reject both arguments.

¶ 30      A defendant is denied effective assistance when counsel's performance falls below an objective standard of reasonableness and a reasonable probability exists that, but for counsel's performance, the trial would have turned out differently. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). An attorney provides ineffective assistance when he or she fails to conduct an adequate investigation into the evidence concerning the charges against the client. *People v. Mitchell*, 2012 IL App (1st) 100907, ¶ 52. Ineffectiveness for failure to investigate depends on the value of the evidence that was not presented at trial and the closeness of the evidence that was presented. *People v. Cooper*, 2013 IL App (1st) 113030, ¶ 57. There is a strong presumption that an attorney acted adequately, and courts give great deference to an attorney's decisions. *Strickland*, 466 U.S. at 689. Thus, matters of trial strategy are protected from claims of ineffectiveness assistance of counsel. *People v. Ward*, 187 Ill. 2d 249, 261-62 (1999). A defendant "cannot rely on speculation or conjecture to justify his [or her] claim of incompetent representation." (Internal quotation marks omitted.) *People v. Clarke*, 391 Ill. App. 3d 596, 614 (2009).

¶ 31    Jackson contends his attorney should have investigated his psychological issues and alcohol dependency. Had his attorney investigated these issues, Jackson argues, it would have given rise to an affirmative defense, a possible plea, and possibly formed the basis of significant mitigation. But Jackson cites no evidence to support his claim that his counsel failed to investigate his psychological issues or alcohol dependency. *People v. Clarke*, 391 Ill. App. 3d 596, 614 (2009) (" 'defendant cannot rely on speculation or conjecture to justify his claim of incompetent representation' " (internal quotation marks omitted) (quoting *People v. Deleon*, 227 Ill. 2d 322, 337 (2008))). Further, there is little value to the psychological and alcohol dependency evidence. No evidence suggests Jackson's psychological issues or alcohol dependency had any impact on his actions or his ability to stand trial. According to his testimony, Jackson was sober during the commission of his crimes and was coherent during trial. The psychological and alcohol dependency evidence came in during the sentencing phase, which, in turn, prompted the trial court to order a BCX. The report found Jackson fit to stand trial and fit for sentencing, stating, "There is no evidence that the defendant suffers from bona fide psychiatric, cognitive or medical impairment."

¶ 32    Furthermore, we do not find the evidence to be closely balanced. Gonzalez and other eyewitnesses testified that Jackson entered the apartment and brutally attacked White and Gonzalez. Forensics found Gonzalez's and Jackson's DNA on the knife and found traces of gunshot residue on both of Jackson's hands. Jackson presented his version of the story, which described an ambush by three men, one of whom was incarcerated in Wisconsin during the incident. Given the overwhelming evidence of guilt, Jackson cannot establish prejudice.

¶ 33    Next, Jackson asserts his attorney should have undertaken scientific testing and analysis of bloodstains in the apartment to establish the locations of each individual during the incident. He contends the location and identification of the source of the blood would have assisted in corroborating his version of the facts.

¶ 34    Jackson's argument is unconvincing. The assistant public defender representing Jackson at trial testified during the posttrial hearing that he made a tactical decision not to conduct DNA analysis, as the risk of prejudicial forensic results outweighed any potential benefit. He also testified the results would have had no probative value in Jackson's defense. Accordingly, this was a matter of trial strategy, which does not sustain a finding of ineffectiveness of counsel. See *Ward*, 187 Ill. 2d at 261-62.

¶ 35    Next, Jackson argues a violation of his due process rights because his attorney knew of issues that gave rise to the BCX and should have acted before trial began. As it is a violation of due process to convict a defendant who is mentally unfit to stand trial (*People v. Burson*, 11 Ill. 2d 360, 368 (1957)), a judge has a duty to order a fitness hearing once facts are brought to the judge's attention that raise a *bona fide* doubt of the defendant's fitness to stand trial or be sentenced. *People v. McCallister*, 193 Ill. 2d 63, 110-11 (2000).

¶ 36    The issue of Jackson's fitness to stand trial and be sentenced initially appeared at the sentencing hearing. At defense counsel's request, the judge ordered a psychological examination. Jackson was tested and found fit for trial and sentencing. Thus, as Jackson was fit for trial and sentencing, due process has been appropriately followed.

¶ 37                          Other Crimes Evidence Admitted at Trial

¶ 38    Jackson challenges the admission of other crimes as not probative of any essential issue at trial due to the lack of factual similarity and, thereby, prejudicial. Further, Jackson claims the

trial court never considered the prejudicial impact of the other crimes, nor weighed the probative value, but admitted evidence of other crimes on the temporal proximity of the incidents only. Jackson's contentions are without merit.

¶ 39    The decision to admit or exclude evidence largely lies within the discretion of the trial court and we will not reverse absent a clear showing of abuse of discretion resulting in prejudice to the defendant. *People v. Barnes*, 2013 IL App (1st) 112873, ¶ 41. An abuse of discretion occurs where "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 133 (2007).

¶ 40    Generally, evidence of other crimes cannot be admitted to show a defendant's character or propensity to commit a crime. *People v. Kimbrough*, 138 Ill. App. 3d 481, 484 (1985). This evidence, however, can be admissible where relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. *People v. Illgen*, 145 Ill. 2d 353, 379 (1991). When offered to prove intent, general similarities between the charged offense and the other crimes will suffice. *Id.* at 373. In addition, its probative value must not be substantially outweighed by its prejudicial effect. *People v. Dabbs*, 239 Ill. 2d 277, 284 (2010). Under the Code of Criminal Procedure of 1963, in a case involving a defendant accused of first degree murder in a domestic violence case, evidence of the defendant's commission of another offense of domestic violence is admissible and may be considered for its bearing on any relevant matter. 725 ILCS 5/115-7.4(a) (West 2008). In weighing the probative value of the evidence against undue prejudice to the defendant, the trial court may consider: (i) the proximity in time to the charged or predicate offense, (ii) the degree of factual similarity to the charged or predicate offense, and (iii) other relevant factors and circumstances. 725 ILCS 5/115-7.4(b) (West 2008).

¶ 41    The State argues Jackson has forfeited his right to appeal the issue because he did not raise the claim in specific terms in his posttrial motion. We agree. In his posttrial motion, Jackson asserted merely, "[t]he Court erred by denying, in part, the Defendant's other Pre-Trial Motions in Limine." But, the State had sought to admit proof of other crimes and Jackson's motions *in limine* never addressed the issue. Jackson has forfeited the argument. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

¶ 42    Even if the issue was not forfeited, the other crimes evidence was properly admitted. Jackson's prior assaults on Gonzalez were proximate in time to the September 2008 offense, one occurring about a year and a half and the other five weeks before the incident. Moreover, the earlier incidents and the offense as charged are factually similar. The February 2007 incident involved Jackson arriving at Gonzalez's home at night, throwing items around the house, and striking Gonzalez twice. The August 2008 incident involved Jackson again arriving at Gonzalez's home, pushing aside her air conditioner, and crashing his car into Gonzalez's parked car. Both incidents involved Jackson's violent actions toward Gonzalez at her home.

¶ 43    Jackson's argument that the incidents are not factually similar because neither incident involved actual or threatened use of a gun, nor any type of home invasion, holds no weight. Even though the earlier incidents do not mirror the current charge, the law requires only general similarity. *Illgen*, 145 Ill. 2d at 373.

¶ 44    Jackson's other contention, that the trial court never considered the prejudicial impact of the other crimes, nor did it weigh the probative value, is incorrect. Twice the trial court acknowledged that it undertook the weighing process, stating, "Analysis would then depend

- 7 -

upon any potential prejudicial effect has to be weighed against the potential probative value" and "with respect to the analysis of the probative value versus prejudicial effect."

¶ 45    Accordingly, evidence of Jackson's other crimes was properly admitted.

Natural Life Sentence for First Degree Murder

¶ 47    Jackson urges that a sentence of natural life in prison was excessive in light of the sentencing court's inadequate consideration of mitigating factors demonstrating Jackson's rehabilitative potential.

¶ 48    Sentencing judges impose criminal penalties according to the seriousness of the crime and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. This mandate requires courts to do more than consider rehabilitative factors, but actually act on those factors, lest they impose a sentence effectively negating the likelihood of rehabilitation. *People v. Rickard*, 99 Ill. App. 3d 914, 919 (1981). On appeal, we adhere to a presumption that the sentencing court considered all relevant factors and any mitigation evidence presented. *People v. Burnette*, 325 Ill. App. 3d 792, 808 (2001). To rebut this presumption, a defendant must make an affirmative showing that the sentencing court did not consider the relevant factors. *People v. Canet*, 218 Ill. App. 3d 855, 864 (1991).

¶ 49    A trial court has broad discretionary powers in imposing a sentence (*People v. Fern*, 189 Ill. 2d 48, 53 (1999)) and generally we adhere to it. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977); see *People v. Shaw*, 351 Ill. App. 3d 1087, 1093 (2004) (trial court, not reviewing court, usually in best position to determine appropriate sentence). The sentencing court has the opportunity to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will not substitute our judgment for that of the trial court absent an abuse of discretion. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001).

¶ 50    Sentences within the statutory mandated guidelines are presumed proper and will not be overturned or reduced unless: (i) affirmatively shown to greatly depart from the spirit and purpose of the law, or (ii) manifestly contrary to constitutional guidelines. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). A sentence promotes the spirit and purpose of the law when it reflects the seriousness of the offense and gives adequate consideration to defendant's rehabilitative potential. *Id*.

¶ 51    The enhancing statute applicable to first degree murder for personally discharging a firearm provides for a sentence up to natural life. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2008). Additionally, as the murder was committed during the course of a felony (home invasion), the court may sentence a term of natural life imprisonment. 730 ILCS 5/5-8-1(a)(1)(b) (West 2008). Thus, Jackson's sentence of natural life imprisonment is within the statutorily mandated guidelines.

¶ 52    Jackson argues that we may find an abuse of discretion even if the sentence is within the statutory range, especially because Jackson has rehabilitative potential. See *People v. Brown*, 243 Ill. App. 3d 170 (1993). Jackson directs us to his relatively minor criminal history, which includes three prior felony convictions and two misdemeanor convictions. Next, Jackson argues he has a strong history of employment and a solid educational background, proving he is capable of productive citizenship. Also, Jackson has strong family ties, which demonstrate that should he be released from jail, he would have support reentering the community. Jackson

states the evidence demonstrates he has significant psychological issues and alcohol dependency. Last, when given an opportunity in allocution, Jackson apologized to the victims and their families.

¶ 53 A sentencing court is not required to give greater weight to defendant's rehabilitative potential than to the seriousness of the offense. *People v. Weatherspoon*, 394 Ill. App. 3d 839, 862 (2009). In fact, the seriousness of an offense is considered the most important factor in determining a sentence. *Id*. We presume the sentencing court considered mitigation evidence when it was presented. See *People v. Burnette*, 325 Ill. App. 3d 792, 808 (2001). Jackson made no affirmative showing that the trial court failed to give proper weight to the mitigating evidence offered at the sentencing hearing.

¶ 54 Jackson argues natural life imprisonment should be reserved for the most serious crimes, and he maintains the murder itself was not particularly gruesome or cruel. Yet, having read the record, we can appreciate why the trial court would say that Jackson was responsible for "an incredible night of terror." Jackson entered Gonzalez's home in the middle of the night and shortly thereafter shot White twice in the back of the head. White's murder was indeed gruesome and cruel.

¶ 55 As to Jackson's assertion of remorse, his testimony shifted blame entirely on the victims, and he only apologized after the State pointed out he had shown no remorse for his crimes.

¶ 56 Considering the aggravating and mitigating evidence presented, we find nothing to indicate that sentencing Jackson to natural life imprisonment amounted to an abuse of discretion.

¶ 57 Fifteen-Year Firearm Enhancement to Attempted First Degree Murder

¶ 58 Lastly, Jackson argues the 15-year enhancement to the attempted first degree murder sentence is void because the State did not notify him at any time before trial that it would seek to enhance that count based on his possession of a firearm. We disagree.

¶ 59 Technically, Jackson has forfeited this claim, as he did not raise the issue at his sentencing hearing or in his motion to reconsider his sentence. We review this issue, however, as Jackson argues the sentencing enhancement is void, and he may challenge a sentence that is not statutorily authorized anytime. *People v. Arna*, 168 Ill. 2d 107, 113 (1995). When a sentence is greater than authorized by statute, the excess portion of the sentence is void. *People v. Thompson*, 209 Ill. 2d 19, 23 (2004).

¶ 60 The Code of Criminal Procedure states that "if an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, *the alleged fact must be included in the charging instrument* or otherwise provided to the defendant though a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt." (Emphasis added.) 725 ILCS 5/111-3(c-5) (West 2008). The statute calls for inclusion of the alleged fact in the charging instrument *or* written notification; if the indictment includes the alleged fact used as a basis for enhancement, no additional written notification is required. See *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 38.

¶ 61 Jackson's indictment for attempted first degree murder states, "[h]e without lawful justification, with intent to kill, did an act to wit: *pulled the trigger of a firearm* pointed at Sulee

Gonzalez, which constituted a substantial step toward the commission of the offense of first degree murder." (Emphasis added.) The sentencing court imposed a 15-year enhancement to the attempted murder count, based on the fact that Jackson was armed with a firearm when he committed the offense. The enhancement provides, "if the person committed the offense while armed with a firearm, 15 years shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-1(d)(i) (West 2008). This is a mandatory sentencing enhancement and must be applied if the court found Jackson was armed with a firearm. See *People v. White*, 2011 IL 109616, ¶ 26 (plea and sentence were held invalid, as trial court did not apply mandatory 15-year firearm enhancement to defendant's sentence).

¶ 62 Jackson maintains that the indictment does not satisfy the notice requirement of section 111-3(c-5) because of the absence of the phrase "armed with a firearm." To satisfy section 111-3(c-5), however, the indictment need not include the sentencing enhancement's language verbatim; it requires only notice of the alleged fact used as a basis to increase his or her sentence. *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 38. We find the indictment provides Jackson notice of the alleged fact used as a basis for the sentencing enhancement. The indictment for attempted first degree murder states Jackson pulled the trigger of a firearm pointed at Sulee Gonzalez, which constituted a substantial step toward the commission of the offense of first degree murder. It is impossible for an individual to pull the trigger of a firearm without simultaneously being armed with a firearm. Therefore, the indictment provided notice of the alleged fact used as a basis for the enhancement.

¶ 63 We observe that some counts included the enhancement statute language verbatim. Inclusion of the verbatim enhancement language, though not required, would be a better practice because it all but guarantees the defendant notice of potential sentencing enhancements.

¶ 64 Corrections to the Mittimus

¶ 65 The mittimus currently reflects that Jackson's attempted first degree murder conviction is a Class M felony. Attempted first degree murder, however, is a Class X felony. 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008). The State does not object. We order the clerk of the circuit court to correct defendant's mittimus to reflect that the attempted murder conviction is a Class X felony. Ill. S. Ct. R. 615(b)(1).

¶ 66 CONCLUSION

¶ 67 We affirm defendant's conviction and sentences and correct the mittimus to correct the classification of the attempted first degree murder count.

¶ 68 Affirmed; mittimus corrected.