2023 IL App (1st) 192187-U

No. 1-19-2187

Order filed September 5, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 19296 |
| | ) | |
| CARL SMITH, | ) | Honorable |
| | ) | Thomas V. Gainer, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order sentencing defendant to 65 years' imprisonment for first-degree murder, including the minimum mandatory firearm enhancement of 25 years, is affirmed where the court did not assign significant weight to an improper factor in aggravation.

¶ 2    Following a jury trial, defendant Carl Smith was convicted of first-degree murder (720

ILCS 5/9-1(a)(1) (West 2014)) and sentenced to a term of 65 years' imprisonment, which included

a 25-year enhancement for personally discharging a firearm during the offense. His sole contention

on appeal is that the trial court erred in sentencing him because it improperly considered, as an aggravating factor, the harm he caused to the victim. We affirm.

¶ 3 Defendant was charged with 24 counts of first-degree murder, two counts of vehicular invasion, and one count of armed robbery. The State proceeded to trial on two first-degree murder counts, alleging defendant, without lawful justification, (1) intentionally or knowingly shot and killed Alfred Barnett (720 ILCS 5/9-1(a)(1) (West 2014)) and (2) shot and killed Barnett knowing his acts created a strong probability of death or great bodily harm (720 ILCS 5/9-1(a)(2) (West 2014)). Both counts charged that, during commission of the offense, defendant personally discharged a firearm that proximately caused death. The State *nolle prossed* the remaining charges. Because defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount the facts here to the extent necessary to resolve the issue raised on appeal.

¶ 4 The events giving rise to defendant's conviction took place near the intersection of 69th Street and Paulina Avenue in Chicago on June 23, 2014. Shaun Henry testified that on that date he was selling loose cigarettes in the doorway of a liquor store at the intersection when he saw his sister, April Henry, get into the front passenger seat of a parked car in which someone else sat in the driver's seat.[1] Shaun, who was about 10 feet from the car, saw defendant—whom he knew as "Man" and identified in court—run toward the car and draw a gun. Shaun knew defendant from the neighborhood, saw him several times a day, and had been to his house.

¶ 5 When defendant pointed the gun, the driver "appeared to swat the gun down," but defendant took a step back and fired once inside the car. Shaun called out to defendant that his sister was in the car, and defendant looked at him and ran off. The car drove away onto 69th Street.

---

[1] Because Shaun and April share a last name, we refer to them by their first names.

Shaun ran after the car and found the driver, Barnett, slumped over the steering wheel and April absent.

¶ 6    Shaun later found April and walked her to a friend's home. He then bought a beer and went to a vacant lot near the liquor store. The police arrived on the scene, asked him questions, and arrested him for drinking on a public way. At the police station, he told one or more officers that "Man" was the shooter. He then identified defendant as the shooter in a photo array. After the shooting, Shaun no longer saw defendant in the neighborhood. Shaun identified himself, April, and "Man" in surveillance videos introduced by the State, which the parties stipulated were fair and accurate recordings of the events depicted.[2] He also identified defendant in court as the shooter.

¶ 7    On cross-examination, Shaun admitted that he was incarcerated for armed habitual criminal and other firearm charges and that, at the time of the shooting, he had been on parole after a three-year incarceration for "one of [his] narcotics cases." He purchased and drank beer before the shooting and did not warn April when defendant drew the gun; nor did he tell anyone in the liquor store about the shooting, call 911, tell anyone else to do so, or approach the police when they arrived at the scene. As of the time of the incident, he and defendant had spoken only two or three times, and defendant had been in the neighborhood only two or three months.

¶ 8    On redirect examination, the State introduced other-crimes evidence which the court instructed the jury was "offered on the issues of motive and consciousness of guilt." Shaun testified that, after the shooting, "Floyd," a man who sold drugs for defendant, approached him and handed him a phone. Over the phone, a person whom Shaun understood to be "Man" (defendant) asked

_____

[2] The parties also stipulated at trial that April had recently died of causes unrelated to the incident.

him whether April was "straight" and said he would give April money or heroin "to make sure she was okay." Defendant also told Shaun, "I am glad you had said something because I was fittin' to give him the whole clip." Shaun denied that the reason he spoke with the police on the day of the shooting was because he feared being charged with a parole violation; rather, he spoke with the police because he "felt that [defendant] almost killed [April] and he killed that guy in that car."

¶ 9    Chicago police detective Donna Walsh testified that Shaun gave a statement in which he identified defendant, whom he called "Man," as the shooter, and then identified defendant in a photo array. The handgun used to shoot Barnett was not recovered. Detective Walsh and her partner interviewed defendant, who identified himself as Carl Smith and denied having a phone or the nickname "Man."

¶ 10    Cook County Department of Corrections investigator Kimberly Hofsteadter testified that she was in the telephone monitoring unit and that on July 4, 2014, defendant had a phone call with a person who called him "Man." Portions of the recording of the call were played in court.

¶ 11    On October 18, 2017, the jury found defendant guilty of both first-degree murder counts, and further found he personally discharged a firearm that proximately caused Barnett's death.

¶ 12    On December 14, 2018, the trial court denied defendant's motion for a new trial and proceeded to sentencing.

¶ 13    Defendant's presentence investigation (PSI) report states that he: had dropped out of school in the ninth grade for "no reason," having been an "average" student; had had a "normal" childhood; had no history of abuse or psychological issues; did not use substances or alcohol; was unmarried; had lived with his mother before his incarceration; and had close relationships with his immediate family members, none of whom had had contact with the justice system. His only

employment was in 2002 until 2003, when he worked as a laborer. He had five minor children from three prior relationships and was in daily contact with his children by phone.

¶ 14    The PSI report reflected that defendant was charged in 2003 with manufacture and delivery of heroin and possession of a controlled substance with intent to deliver, for which he was convicted and sentenced to concurrent terms of 3 years' probation. However, his probation was terminated unsatisfactorily following his subsequent convictions of attempted first-degree murder and unlawful use of a weapon by a felon, for which he was sentenced to concurrent terms of 7 and 3 years' incarceration, respectively. He was also convicted of DUI in 2005 and sentenced to 50 days' incarceration.

¶ 15    The State's attorney noted that, in addition to the crimes outlined in the PSI report, defendant had been convicted of unlawful use of a weapon by a felon in 2011, having received "a much reduced sentence at 50[%] for that six years" in exchange for pleading guilty to that crime in lieu of the original charge of armed habitual criminal. Defendant had been on parole for that offense when he shot and killed Barnett.

¶ 16    The State presented, "for aggravation purposes," the parties' stipulation to "very basic facts" of another case the State ultimately *nolle prossed*: On July 2, 2014, defendant was arrested in a home on the 8500 block of South Bishop Street, where a semiautomatic steel rifle containing six live rounds was recovered from atop a kitchen cabinet. There were no indicia of defendant's residency in that home, other than his presence. Regarding defendant's conviction in the 2005 attempted murder case, the parties stipulated that defendant, while "looking for the victim because of a drug dispute," approached the victim and shot him in the hand and stomach.

¶ 17    The State read into the record a victim impact statement by Barnett's sister, Taraysha Martin, which noted that Barnett left behind his family, including three children, several grandchildren, and his fiancée.

¶ 18    The State argued that, given defendant's "criminality almost continuously" since 2003, "his violence in perfecting his drug dealing and his way of making money," the court should impose a sentence "significantly off" the minimum term.

¶ 19    Defense counsel acknowledged defendant had "not had a very challenging life," noting that he came from a loving family. Counsel pointed out that defendant had five children, had something to offer society, and would be 78 years old upon his release from prison if the court imposed the minimum sentence, *i.e.*, 20 years for the murder plus 25 years' enhancement for use of a firearm. Counsel requested "a sentence that wouldn't ensure that [he] essentially dies in prison." Defendant declined the opportunity to speak at sentencing.

¶ 20    The trial court sentenced defendant to 65 years in prison (40 years on the murder charge plus 25 years for the firearm enhancement) on the intentional murder count (count IX) (720 ILCS 5/9-1(a)(1) (West 2014)) and merged the strong probability murder count (count X) (720 ILCS 5/9-1(a)(2) (West 2014)). Before imposing sentence, the trial court stated that it was familiar with the facts of the case, having presided over the trial, and that it had reviewed its notes, the PSI report including defendant's criminal history, and the victim impact statement. The court then stated it "reviewed the factors in mitigation and aggravation" and found "very little mitigation" other than that argued by counsel. The court noted that defendant had "a significant criminal history, which is punctuated by" his prior convictions for attempted first-degree murder and for felony possession

of a firearm, which resulted in terms of incarceration of seven and six years, respectively. Finally, the court stated:

> "The defendant's conduct obviously caused serious harm to the victim in this case. The defendant having spent time in the Illinois Department of Corrections and was actually still on parole at the time of this offense, apparently has a problem with rehabilitation."

¶ 21    The court found that the "appropriate sentence" for first-degree murder with intent to kill with discharge of a firearm proximately causing death was 65 years.

¶ 22    Defense informed the court that he intended to file a motion to reconsider the sentence, and the court ordered a stay of mittimus until January 14, 2019. On that date, counsel did not appear, and the trial court struck the matter from the call.

¶ 23    On October 29, 2019, defendant filed a *pro se* motion for leave to file a late notice of appeal on the basis of ineffective assistance of trial counsel and insufficiency of the trial evidence. This court denied the motion for lack of jurisdiction on November 6, 2019. Our supreme court granted defendant's request for a supervisory order directing this court to treat defendant's appeal as timely filed. On October 12, 2021, in accordance with our supreme court's supervisory order of September 29, 2021, we vacated our prior order and allowed defendant's motion.

¶ 24    On appeal, defendant sole contention is that the trial court erred in sentencing him because it improperly considered, as an aggravating factor, the fact that he caused harm to the victim. The parties agree defendant forfeited this argument by failing to raise it in the trial court. However, defendant contends the issue is reviewable for plain error and, alternatively, counsel was ineffective for failing to preserve the claim.

¶ 25    A defendant's failure to object to an error at trial and to include the error in a posttrial motion ordinarily effects a forfeiture of appellate review of that error. *People v. Johnson*, 238 Ill.

2d 478, 484 (2010) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). However, the plain-error doctrine, where applicable, permits a reviewing court to provide relief on the basis of a forfeited claim. *Johnson*, 238 Ill. 2d at 484; see also Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 26    The plain-error doctrine "is construed as a narrow and limited exception to the typical forfeiture rule applicable to unpreserved claims." *Johnson*, 238 Ill. 2d at 484 (citing *People v. Herron*, 215 Ill. 2d 167, 177 (2005)). Defendant bears the burden of persuasion to show the forfeiture should be excused. *Johnson*, 238 Ill. 2d at 485 (citing *Herron*, 215 Ill. 2d at 187). "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). In the sentencing context, the defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced (referred to as first-prong plain error) or (2) the error was so egregious as to deny the defendant a fair sentencing hearing (second-prong plain error). *Hillier*, 237 Ill. 2d at 545. Thus, the threshold question in any plain-error analysis is whether there was an error.

¶ 27    First-degree murder is a class X felony with a sentencing range of 20 to 60 years' imprisonment. 730 ILCS 5/5-4.5-20(a) (West 2016). However, in this case, the court was required to add an enhancement in the range of 25 years to life because the jury found that defendant had personally discharged a firearm that proximately caused Barnett's death. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2016). Thus, the minimum term the court could have imposed was 45 years, and the maximum, natural life.

¶ 28    Here, the trial court sentenced defendant to 65 years' imprisonment, which, considering the 25-year minimum enhancement, is well within the statutory range. The sentence is therefore presumed to be proper and ordinarily would be reviewed for abuse of discretion. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 17.

¶ 29    In this court, however, defendant does not dispute that his sentence fell within the applicable sentencing range. Rather, he argues that the court erred in considering an element of the offense of first-degree murder as a factor in aggravation at sentencing. Specifically, he contends that the court impermissibly considered the harm to the victim, *i.e.*, his death, as an aggravating factor at sentencing. Whether the trial court considered an improper factor in aggravation is a question we review *de novo*. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49 (citing *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8).

¶ 30    A sentencing court is forbidden from using an element of the crime of which a defendant has been convicted as a basis for "imposing a 'harsher sentence than might otherwise have been imposed.'" *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 9 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992)). This prohibition against a "double enhancement" is based on the assumption that the legislature considered the factors inherent in the offense in determining the appropriate range of penalties as set forth by statute. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995). Where the appellate court cannot discern the weight assigned to a factor improperly considered by the sentencing court, the cause must be remanded for resentencing. *People v. Bourke*, 96 Ill. 2d 327, 332 (1983). Remand is not required, however, "where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *Id.*

¶ 31   Defendant was convicted of first-degree murder. The elements of first-degree murder include, of course, the death resulting from the defendant's conduct, along with the requisite *mens rea*. 720 ILCS 5/9-1(a)(1), (2) (West 2014). Where, as here, a death due to the criminal conduct is an element of the offense, the double-enhancement rule prohibits the court from imposing a more severe sentence on the ground that the victim's death was the " 'end result of the defendant's conduct.' " *People v. Smith*, 195 Ill. App. 3d 878, 885 (1990) (vacating sentence for voluntary manslaughter where it was clear that the sentencing court was improperly concerned with the fact that the end result of the defendant's conduct was the victim's death) (quoting *People v. Saldivar*, 113 Ill. 2d 256, 271-72 (1986)).

¶ 32   However, "the fact that [the defendant's] conduct "threatened or caused serious harm *** is a proper aggravating factor to be considered during sentencing even in cases where serious bodily harm is implicit in the offense." *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 56 (affirming 50-year sentence for first-degree murder with a consecutive 30-year firearm enhancement where the sentencing court said " 'Factors in aggravation, the defendant's conduct did cause or threaten serious harm, the ultimate serious harm, murder.' ").

¶ 33   Here, defendant argues that plain error occurred and that remand is necessary under the second-prong plain error analysis. Specifically, he maintains that the sentencing court's statement that his conduct "obviously caused serious harm to the victim" evinces a violation of the double-enhancement rule and that the record disallows the conclusion that Barnett's death was afforded insignificant weight in aggravation. We find that no error occurred, because the court did not improperly rely on Barnett's death in aggravation, and that, even if it had, the factor was afforded

such insignificant weight that it did not result in a harsher sentence than the court would have otherwise imposed.

¶ 34    A defendant bears the burden to affirmatively establish that his sentence was based on improper factors. *Bowen*, 2015 IL App (1st) 132046, ¶ 49. In making this determination, we consider the record as a whole and do not focus on isolated statements. *Id.* ¶ 50. A reasoned judgment as to the proper penalty for a crime must be based on the particular circumstances of each case, and the court is not restricted from considering " 'the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by defendant.' " *Saldivar*, 113 Ill. 2d at 268-69 (quoting *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18 (1981)). Nor is the rule against double-enhancement to be applied so rigidly as to restrict the trial court's function by compelling it to ignore factors relevant to the imposition of the sentence. *Saldivar*, 113 Ill. 2d at 268.

¶ 35    After reviewing the record as a whole, we find that the court's mention of the "serious harm" caused does not support defendant's conclusion that the court relied on Barnett's death as a factor in aggravation. The record shows that in imposing sentence the court stated it considered its notes from trial, the PSI report, the victim's impact statement, and the factors in mitigation and aggravation. The court found "very little" in the way of mitigation, a conclusion consistent with the information about defendant's childhood in the PSI report and counsel's acknowledgment that defendant had not led a particularly "challenging" life. The court also considered that defendant's "significant criminal history" included prior convictions for attempted first-degree murder and felony firearm possession, for which he had been sentenced to a total of 13 years, and noted that he murdered Barnett while on probation and apparently had a "problem" with rehabilitation.

Defendant's prior convictions and his status as a parolee at the time of the instant offense are legitimate aggravating factors. See 730 ILCS 5/5-5-3.2(a)(3), (12) (West 2016).

¶ 36 Notably, the court did not expressly say it considered Barnett's death as a factor in aggravation. See *People v. Beals*, 162 Ill. 2d 497, 509 (1994) (finding no sentencing error where the court "never indicated *** that it 'considered' the victim's death as an aggravating factor justifying an extended-term sentence" of 80 years for first-degree murder, but rather "simply [made] a general passing comment based upon the consequences of the defendant's actions"). Nor did the State argue that Barnett's death was a factor in aggravation. See *Bourke*, 96 Ill. 2d at 332-33 (finding the record showed the sentencing court's comment "in passing" regarding an element of the offense did not support a finding of a double enhancement where probation was inappropriate, the sentence was substantially below the maximum, and the State had not urged the court to consider the improper factor in aggravation).

¶ 37 As in *Beals* and *Bourke*, the court in the case at bar made only fleeting reference to the "serious harm" defendant "obviously" caused the victim. Immediately thereafter, the court noted that defendant had been on parole at the time and was apparently not susceptible to rehabilitation. The court's most extensive statements concerning its sentencing rationale concern defendant's "significant criminal history, *** punctuated by" his incarcerations for attempted first-degree murder and felony possession of a firearm. The court then imposed only the median sentence allowed by statute and the minimum firearm enhancement.

¶ 38 Given this record, we cannot conclude that the court improperly considered the harm in aggravation, especially where the court did not expressly characterize the death as "aggravating" or as a factor "in aggravation." As such, the court's brief acknowledgment of the harm caused did

not amount to an error or result in a sentencing term longer than defendant would have otherwise received.

¶ 39    Nevertheless, defendant, relying on *Abdelhadi*, 2012 IL App (2d) 111053, argues that clear error should be found, and that remand would be "prudent" because the record does not disclose that, at sentencing, the trial court assigned only insignificant weight to Barnett's death. We disagree.

¶ 40    In *Abdelhadi*, the appellate court, in reviewing a 10-year sentence for aggravated arson for plain error on direct appeal, recognized that second-prong plain error was potentially applicable, "because when a trial court considers erroneous aggravating factors in determining the appropriate sentence of imprisonment, the defendant's 'fundamental right to liberty' is unjustly affected." *Id.* ¶ 7 (quoting *People v. James*, 255 Ill. App. 3d 516, 531 (1993)). Because the record revealed that the sentencing court considered the threat of harm—a factor implicit in the offense—the appellate court determined that a clear or obvious error occurred. *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 12. Next, the appellate court considered whether the record disclosed that the weight the sentencing court placed on the improper factor was so insignificant that it did not lead to a greater sentence, based on two relevant considerations: (1) whether the court made any "dismissive or emphatic comments" in reciting its consideration of the element and (2) whether the defendant received a sentence substantially less than the maximum permitted by statute. *Id.* ¶ 18 (citing *People v. Dowding*, 388 Ill. App. 3d 936, 945 (2009)). Finding that these factors did not permit discernment of the weight that had been placed on the improper factor, the appellate court remanded the case for a new sentencing hearing. *Abdelhadi*, 2012 IL App (2d) 111053, ¶¶ 19-21.

¶ 41    As to the threshold question, *Abdelhadi* does not dispel our conclusion that no clear or obvious error occurred. In *Abdelhadi*, clear or obvious error occurred where "[t]he trial court's recitation of the aggravating factors mirrored the factors that the State argued in aggravation," and "[t]he mirroring *** show[ed] *** that the trial court actually considered that threat of harm as a factor in aggravation." *Id.* ¶ 12. The State made no such argument here.

¶ 42    Nor do we find that, even were error established, application of the two *Abdelhadi* factors precludes a finding that the weight afforded to the improper factor was insignificant. See *id.* ¶ 18. As to the first factor, defendant argues in his opening brief that the sentencing court made no dismissive or emphatic comments, but in his reply brief suggests the court's use of the word "obviously" indicates an improper focus on the "end result" of the harm, *i.e.*, Barnett's death. On the contrary, the mere use of the word "obviously" (meaning needless to say, or as is plainly evident) in referring to the harm strikes us as, at most, "neither dismissive nor emphatic." *Id.* ¶ 19.

¶ 43    As to the second *Abdelhadi* factor, defendant's 65-year sentence was "substantially less" than the term of natural life he might have received, and thus does not support remand. See *id.* ¶ 18.

¶ 44    However, defendant argues that, because his sentence exceeded the minimum, the court "likely" assigned significant weight to the harm caused, and that, even if legitimate factors in aggravation appear to justify his sentence, remand would be "prudent." We disagree.

¶ 45    In *Abdelhadi*, the court remanded where the sentence, although not the maximum of 30 years, was above the minimum of 6 years, and the record did not permit a conclusion that the improper factor was afforded no weight at sentencing. *Id.* ¶ 19. In contrast, here, the record permits the conclusion that, assuming the court relied on the harm in aggravation, remand is unnecessary

because the record shows the harm was afforded no weight. As noted, the State did not argue, and the court made only passing reference to, Barnett's death, and the court neither repeated the reference nor stated it was a factor in aggravation. The court found little in mitigation and emphasized proper factors in aggravation, including defendant's prior felony convictions, incarcerations, and recidivism.

¶ 46 Further, unlike in *Abdelhadi*, the court in this case was required to apply the firearm enhancement statute by selecting an enhancement term based on the injury caused, *i.e.*, "great bodily harm, permanent disability, permanent disfigurement, or death." 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2016). As we have previously stated, these categories of injury serve as "guidelines" for selecting an appropriate enhancement term, such that, "*[d]epending on the injury caused by the firearm used by the defendant*, the trial court has discretion to impose a sentence in the range of 25-years-to-life." (Emphasis added.) *People v. Butler*, 2013 IL App (1st) 120923, ¶ 41 (rejecting constitutional challenge to section 5-8-1(a)(1)(d)(iii)).

¶ 47 Here, the court imposed the minimum enhancement despite defendant's infliction of the severest of injuries. In sum, assuming the court relied on the harm in aggravation, "the record adequately demonstrates that the weight placed on the improperly considered aggravating factor was so insignificant that it did not result in a greater sentence" such that remand is unnecessary. See *Bourke*, 96 Ill. 2d at 333 (remand unnecessary where sentencing court noted improper factor "in passing," where the State did not mention the improper factor, and where sentence imposed was substantially below the maximum). Moreover, the court's obligation to consider the "guidelines" for determining the enhancement justifies at least a passing reference to the injury

(which is all the court gave it) and supports our conclusion that the court did not commit clear or obvious error.

¶ 48    We also reject defendant's reliance on *People v. Stoneking*, 193 Ill. App. 3d 98 (1990), which does not, as defendant suggests, provide that a sentencing court's mere mention of "harm," without further elaboration, in the context of a first-degree murder conviction is automatic cause for remand. Rather, in *Stoneking*, the appellate court reversed the trial court's denial of a motion to withdraw guilty plea and remanded for resentencing on the basis that the trial court had, before imposing the maximum sentence of life imprisonment on a plea, failed to inform the defendant that such a sentence would make him ineligible for parole. *Id.* at 98-100.

¶ 49    The court in *Stoneking* did consider the defendant's *secondary* argument that the trial court improperly considered in aggravation the fact that his conduct caused serious injury, because the issue could "occur again on remand." *Id.* at 100. In doing so, the court noted that, "from the language of the trial court," it could not determine whether the court's mention of serious injury while imposing the maximum penalty permissibly referred to "the degree of harm or the gravity of the defendant's conduct." *Id.* (citing *Saldivar*, 113 Ill. 2d 256). However, the court did not remand on that basis. Further, unlike in *Stoneking*, the language in the record before us discloses that the court mentioned the injury in passing and elaborated as to legitimate aggravating factors. As the trial court did not err at sentencing, we find the defendant forfeited this claim.

¶ 50    Defendant alternatively argues that we may review the issue on the basis that his trial counsel was ineffective in failing to object to the trial court's reliance on the improper aggravating factor of harm and in failing to preserve this argument in a post-sentencing motion. However,

defendant does not suggest how this alternative analysis might alter our conclusion, and we find that it does not.

¶ 51    A criminal defendant has a constitutionally guaranteed right to effective representation at trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 73. A claim of ineffective assistance of counsel requires the defendant to prove both (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the defendant was prejudiced as a result. *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting standard set by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)). Prejudice is established by " 'a reasonable probability' that, but for counsel's ineffectiveness, the defendant's sentence or conviction would have been different." *People v. Ford*, 368 Ill. App. 3d 562, 571 (2006) (quoting *People v. Mack*, 167 Ill. 2d 525, 532 (1995)). Claims of ineffective assistance of counsel are reviewed *de novo*. *People v. Miramontes*, 2018 IL App (1st) 160410, ¶ 13.

¶ 52    Considering defendant's claim as one of ineffective assistance of counsel rather than under the lens of plain error cannot alter the outcome of this appeal. The two analyses are not unrelated. See *People v. McCarter*, 385 Ill. App. 3d 919, 928 (2008) (ineffective assistance of counsel is "a substantial impairment of fundamental rights, thus satisfying the second prong" of plain error) (citing *Herron*, 215 Ill. 2d at 178-79). In the present case, regardless of the reasonableness of counsel's alleged failures, defendant cannot establish prejudice given our conclusion that the court did not consider Barnett's death in aggravation. Having found no prejudice, we need not consider whether counsel's performance was objectively unreasonable. *Ford*, 368 Ill. App. 3d at 571 ("The

- 17 -

court need not decide whether counsel's performance was deficient if the defendant suffered no prejudice from the alleged errors.") (citing *People v. Foster*, 168 Ill. 2d 465, 475 (1995)).

¶ 53  For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 54  Affirmed.