NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240917-U

NO. 4-24-0917

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 1, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| DESMOND S. STERLING, | ) | No. 23CF341 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant forfeited his argument that the trial court considered an improper
factor in aggravation when imposing sentence.
(2) Defendant failed to establish that his sentence was excessive.

¶ 2    Following a bench trial, defendant, Desmond S. Sterling, was convicted of first

degree murder. The trial court subsequently sentenced him to 75 years' imprisonment. On

appeal, defendant challenges only his sentence, arguing that the court (1) improperly considered

in aggravation an element inherent in the offense—that defendant's conduct caused serious harm

resulting in death—or, alternatively, (2) imposed an excessive sentence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4                          A. The Charges

¶ 5    In April 2023, defendant was indicted on three counts of first degree murder (720

ILCS 5/9-1(a)(1)-(2) (West 2022)) (counts I-III). Count I of the indictment alleged that on

February 20, 2023, defendant intentionally caused the death of Kiejoun Watts by shooting him in the head with a firearm. *Id.* § 9-1(a)(1). All three counts referenced a mandatory firearm enhancement of 25 years to life imprisonment pursuant to section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2022)).

¶ 6                                                  B. The Bench Trial

¶ 7            Defendant's bench trial commenced on February 26, 2024, and concluded on March 1, 2024. We will briefly summarize the evidence presented that is relevant to the sentencing issues raised on appeal.

¶ 8            The State presented evidence that on the night of February 20, 2023, police responded to a report of a suspicious vehicle at Victory Church in Bloomington, Illinois. Police arrived at the church at 8:49 p.m. and discovered the victim's body on the ground near a bus on the church property. Officers observed blood coming from the victim's nose and the left side of his head, and they also located a single 9-millimeter shell casing at the crime scene. The victim was wearing an Apple watch, and his cell phone was later discovered on the side of a road near the church. An autopsy revealed that the cause of death was a single gunshot wound to the back of the head. The firearm used to shoot the victim was never recovered.

¶ 9            After reviewing messages and photographs from the victim's Apple watch and cell phone, as well as photographs and messages on defendant's Facebook accounts, the investigators concluded that the victim had agreed to meet with defendant on the night of the murder to purchase a semiautomatic 9-millimeter Glock pistol from him. Security video from a Thorntons gas station showed defendant entering the victim's vehicle at 8:23 p.m. on February 20, 2023. The victim's vehicle was not seen again until it was located on February 27, 2023, in the parking lot of an apartment complex located approximately two blocks from the gas station.

Data from the victim's cell phone revealed that the phone was transported from the area of his residence at 8 p.m., taken to the Thorntons gas station at 8:23 p.m., and then taken to the church at 8:41 p.m. Cell tower data showed that defendant's phone was in the area of his own residence between 7:52 p.m. and 7:56 p.m., but there was no data from the tower between 7:56 p.m. and 8:58 p.m. The tower next picked up defendant's phone at 8:59 p.m. in the vicinity of where the victim's vehicle was later located. Investigators found a latent fingerprint belonging to defendant on the driver's seatbelt of the victim's vehicle. They also discovered gunshot residue on the right cuff of a black jacket found in defendant's apartment, which they believed matched the jacket defendant was seen wearing on the night in question.

¶ 10    A detective reviewed a Cellebrite extraction report containing photographs and videos from defendant's iCloud account. The images showed defendant in possession, in private and public places, of "various types of handguns," including multiple Glock pistols, shotgun shells, and "what appears to be a[n] AR-15 style magazine."

¶ 11    Jasselyn Currie, the mother of the victim's girlfriend, testified that on February 22, 2023, she was next to her son, Armani, while he was on a FaceTime video call with defendant. According to Currie, she heard defendant tell Armani, "Yes, I killed [the victim], but it was personal," and "I shot that n*** in the head." She also heard defendant say that he could not "leave the car and leave the phone," and that he "had to take it to get away." Defendant was arrested in Chicago, Illinois, on June 21, 2023.

¶ 12    The trial court, after noting that the evidence of defendant's guilt was "overwhelming," found him guilty of all three counts of first degree murder beyond a reasonable doubt.

¶ 13    C. The Sentencing Hearing

¶ 14         The trial court conducted a sentencing hearing on May 2, 2024. The court noted at the outset of the hearing that it had reviewed the presentence investigation report (PSI) filed by the State. According to the PSI, defendant was born in Chicago in December 2000 and had been living in McLean County since the age of three. Defendant began living with his foster parents, Andrew and Katharina Held, at the age of 11. Defendant was adjudicated neglected in 2013, and his biological mother's parental rights were terminated in 2015. The Helds became defendant's legal guardians in 2016. In December 2018, Andrew Held contacted "Juvenile Court Services" and " 'said that [defendant] is running around with a gun and he can't have him at his house because that puts his wife and child's safety in jeopardy.' " The PSI also stated, "Mr. Held 'reiterated he does not feel safe with [defendant] in his house' and did not want him residing at the residence any longer." Defendant reported that he has a "great relationship" with his biological mother, no relationship with his biological father, and that he loves the Helds " 'to the fullest.' " Defendant was diagnosed with attention-deficit/hyperactivity disorder at a young age, and he reported being diagnosed with bipolar disorder while in jail, although the latter diagnosis was never verified. Defendant reported using cannabis daily since the age of 16. He completed "Moral Recognition Therapy" while on juvenile probation in 2018, and he "graduated McLean County Detention Facility's Stress Management program" in December 2023. Defendant also worked as a "Pod Worker" for a total of 35 days while in pretrial detention in the instant case. According to the PSI, defendant's criminal history consists of one felony burglary conviction, one misdemeanor theft conviction, and two misdemeanor traffic offenses. The PSI further indicates that defendant committed 16 rule violations while in pretrial detention, including 2 major rule violations for "assault or battery."

¶ 15         As evidence in aggravation, the State republished several exhibits that had been

introduced at trial. The exhibits consisted of photos and videos depicting defendant in possession of various firearms and ammunition, both in private and in public. The State also called Bryan Hanner, the lead detective on the instant homicide investigation, who testified that on March 8, 2023, Deputy Alexandra Norville took screen recordings of several videos defendant had posted to his Facebook "stories" shortly after the murder. One was a TikTok video depicting two young men, neither of whom was defendant, performing a skit in which they seemingly mocked a mother mourning the shooting death of her child. The other video was taken from a cruise ship and included the text, "Bloomington, Illinois," and "to be continued." The victim's mother and grandmother both read victim impact statements in open court. Defendant did not present any evidence in mitigation, nor did he give a statement in allocution.

¶ 16    The State recommended a 95-year prison sentence—60 years for murder plus an additional 35 years for the firearm enhancement—arguing that a "lengthy term of incarceration is not only necessary to protect the public from the threat the defendant poses, but it is also necessary to deter others from committing that same crime." In arguing that defendant posed a grave threat to the community, the State highlighted the nature and circumstances of the instant offense, defendant's criminal history, the pictures and videos of defendant in possession of firearms—which the State described as "handguns of various models, sometimes multiple, equipped with lighting accessories, high capacity drum magazines, extended magazines and, of even further concern, high-powered assault rifles"—defendant's numerous rule violations while in pretrial detention, and his "cruel mockery" of the victim's family following the murder.

¶ 17    Defendant recommended that the trial court impose the minimum 20-year sentence for murder and the minimum firearm enhancement of 25 years, for an aggregate sentence of 45 years' imprisonment. In arguing for imposition of the minimum sentence,

defendant noted that he continued to maintain his innocence, and he highlighted "the difficult circumstances that he was raised in as a child," his "significant mental illness," which was "exacerbated by his chronic drug usage," his "limited prior criminal history," and the fact that he was still young and capable of rehabilitation.

¶ 18　　　The trial court indicated it had considered the evidence presented both at trial and the sentencing hearing, the PSI, defendant's youth and attendant circumstances, his potential for rehabilitation, the arguments and recommendations of the parties, and the statutory factors in mitigation and aggravation. In discussing the nature and circumstances of the offense, the court stated the following: "[T]he facts of this case are pretty extreme. *** [T]here was no indication from the evidence as to what the motive was for this killing. It was simply an execution. It was a person shot in the back of the head, dropping immediately to his death." The court also highlighted defendant's "almost taunting of the victim's family *** after the offense" and his numerous rule violations while in jail, "indicating that [he] is a serious threat in whatever environment he *** is currently involved with." While the court noted that defendant's childhood "was very difficult" and that he "has mental health issues," it stressed that defendant "had a real opportunity to succeed" when the Held family took him in, but he was instead "kicked out of their household because he was running around with guns." In concluding its discussion of the applicable mitigating and aggravating evidence, the court stated the following:

> "[T]he history of this defendant is that he is and, as the evidence presented in this case would suggest, that he is a serious threat to the community, that a sentence is necessary to deter others. His conduct certainly caused serious harm, that being death. He has a prior history of criminal activity.
>
> 　　*** [T]here are some positive things. He graduated from the stress

management program downstairs. He was a pod worker for a period of time, looks like 35 days. So *** there are some positive things involved here. But, the defendant, the overriding factor here is that the defendant constitutes a significant threat to the community."

The court, after finding that counts II and III merged into count I, sentenced defendant to 50 years' imprisonment for murder and imposed a 25-year mandatory firearm enhancement, for an aggregate sentence of 75 years' imprisonment.

¶ 19                          D. Postsentencing Proceedings

¶ 20          Defendant filed a motion to reconsider sentence, arguing that the trial court imposed an excessive sentence "given the facts and circumstances." The court denied defendant's motion following a hearing.

¶ 21          This appeal followed.

¶ 22                              II. ANALYSIS

¶ 23          On appeal, defendant challenges his 75-year prison sentence for first degree murder, arguing that the trial court (1) improperly considered in aggravation an element inherent in the offense—that defendant's conduct caused serious harm resulting in death—or, alternatively, (2) imposed an excessive sentence.

¶ 24                          A. Double Enhancement

¶ 25          First, defendant argues the trial court considered an improper aggravating factor in imposing sentence. Specifically, defendant contends the court improperly relied on the fact that his conduct caused serious harm—the victim's death—in aggravation, which is an element inherent in the offense of first degree murder. Defendant acknowledges that he forfeited this argument by failing to raise it in the trial court, but he nonetheless asks this court to review it

under the first prong of the plain-error doctrine. See, *e.g.*, *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("[T]o preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required.").

¶ 26　　　　The plain-error doctrine is a "narrow and limited exception" to the general rules of forfeiture. *Id.* at 545. To obtain relief under the doctrine, a defendant first must demonstrate that a clear or obvious error occurred. *Id.* If the defendant does so, he "must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* The defendant bears the burden of persuasion under both prongs of the plain-error doctrine. *Id.* "If the defendant fails to meet his burden, the procedural default will be honored." *Id.* "We begin a plain-error analysis by determining if there was reversible error in the first instance, as '[a]bsent reversible error, there can be no plain error.' " *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 38 (quoting *People v. Cosby*, 231 Ill. 2d 262, 273 (2008)).

¶ 27　　　　The Corrections Code sets forth mitigating and aggravating factors a trial court may consider in fashioning an appropriate sentence. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022). It provides, in part, that a trial court may rely on the fact that a defendant's "conduct caused or threatened serious harm" as a factor in aggravation when imposing its sentence. *Id.* § 5-5-3.2(a)(1). "However, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor." *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 71; see *People v. Phelps*, 211 Ill. 2d 1, 14 (2004) ("[A] double enhancement occurs when a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." (Internal quotation marks omitted.)). "The prohibition against double enhancements is based on the assumption that, in designating the

appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Phelps*, 211 Ill. 2d at 12. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. "The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). We review *de novo* the question of whether the trial court considered an improper factor in aggravation when imposing sentence. See, *e.g.*, *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103.

¶ 28        "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death," "he or she either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another." 720 ILCS 5/9-1(a)(1) (West 2022). First degree murder is a Class M felony, with a sentencing range of 20 to 60 years' imprisonment. 730 ILCS 5/5-4.5-20(a) (West 2022). However,

> "if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."
>
> *Id.* § 5-8-1(a)(1)(d)(iii).

Thus, defendant faced a sentencing range of 45 years to natural life imprisonment.

¶ 29        Here, in recommending a 95-year prison sentence, the State argued that a "lengthy term of incarceration is not only necessary to protect the public from the threat the defendant

poses, but it is also necessary to deter others from committing that same crime." The trial court, after discussing the nature and circumstances of the offense and the applicable mitigating and aggravating evidence, stated the following, in pertinent part:

> "[T]he history of this defendant is that he is and, as the evidence presented in this case would suggest, that he is a serious threat to the community, that a sentence is necessary to deter others. *His conduct certainly caused serious harm, that being death.* He has a prior history of criminal activity.
>
> *** [T]here are some positive things. He graduated from the stress management program downstairs. He was a pod worker for a period of time, looks like 35 days. So *** there are some positive things involved here. But, the defendant, the overriding factor here is that the defendant constitutes a significant threat to the community." (Emphasis added.)

¶ 30 We find that even assuming, *arguendo*, the trial court's passing reference to "serious harm" constituted consideration of an improper factor in aggravation, defendant has failed to satisfy his burden of demonstrating that the court's alleged error amounted to a clear, reversible error under the plain-error doctrine. See *Cosby*, 231 Ill. 2d at 273 ("Absent reversible error, there can be no plain error."); see also *People v. Burge*, 254 Ill. App. 3d 85, 91 (1993) ("[E]very reference by the sentencing court to a factor implicit in the offense does not constitute reversible error.").

¶ 31 Our supreme court has explained that a trial court's reliance on an improper aggravating factor does not automatically constitute reversible error:

> "It is clear from the decisions of this court and the appellate court that reliance on an improper factor in aggravation does not always necessitate

remandment for resentencing. Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing. [Citations.] However, where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." *People v. Bourke*, 96 Ill. 2d 327, 332 (1983).

¶ 32　　　　The supreme court's decisions in *Bourke* and *People v. Martin*, 119 Ill. 2d 453 (1988), are instructive of when a trial court's consideration of an improper factor amounts to reversible error. In *Bourke*, 96 Ill. 2d at 328, the defendant was convicted of two counts of burglary and one count of deceptive practices. The trial court, in imposing four-year sentences for the burglary convictions and a two-year sentence for the deceptive practices conviction, improperly noted " 'in passing' " that the defendant received compensation for committing the offenses, which was an element inherent in the offenses. *Id.* at 330. However, the court also stated " 'that to readmit [the defendant] to probation in this matter would deprecate the seriousness of these offenses, would in effect place little or no meaning on the probation terms that were previously entered.' " *Id.* at 331. On appeal, the *Bourke* court held that "the record adequately demonstrates that the weight placed on the improperly considered aggravating factor was so insignificant that it did not result in a greater sentence." *Id.* at 333. The *Bourke* court highlighted the fact that the State "did not mention the improperly considered aggravating factor in [its] closing arguments, but rather stressed [the] defendant's 'flagrant violation of the terms of probation,' the same factor that the [trial] court emphasized." *Id.* The supreme court also noted that the "defendant's sentences were substantially below the maximum sentences permissible for burglary and deceptive practices." *Id.*

¶ 33        In *Martin*, 119 Ill. 2d at 455, 463, the supreme court distinguished its decision in *Bourke* and held that the trial court committed reversible error in sentencing the defendant to the maximum penalty for involuntary manslaughter where it considered in aggravation that the defendant's conduct caused serious harm to the victim, resulting in death.. The *Martin* court rejected the State's argument that, under *Bourke*, remand was unnecessary because the trial court placed no significant weight on the improper factor. *Id.* at 462-63. It distinguished its decision in *Bourke* as follows:

> "*Bourke*, however, is distinguishable. There the State never mentioned the improper factor in its closing argument at the sentencing. [Citation.] Instead, the State in *Bourke* stressed the 'defendant's "flagrant violations of the terms of probation," [which was] the same factor the court emphasized [when it imposed the sentence].' [Citation.] And, the defendant in *Bourke* was not sentenced to the statutory maximum for his offense.
>
> In contrast, not only was the defendant in this case given the maximum penalty, but also the State in requesting the maximum sentence emphasized the improper factor—the victim's death. Given the record in this case, we cannot conclude, as this court did in *Bourke*, that the judge's reliance on the improper factor was so insubstantial that it did not affect the length of the sentence." *Id.* at 462.

¶ 34        We find the instant case similar to *Bourke* and distinguishable from *Martin*. Here, as in *Bourke*, and unlike in *Martin*, the State did not argue "serious harm" in aggravation, and the trial court merely mentioned it in passing before stressing that the "overriding" factor was that "defendant constitutes a significant threat to the community." See *Bourke*, 96 Ill. 2d at 333;

*Martin*, 119 Ill. 2d at 462; see also *People v. Brown*, 2018 IL App (1st) 160924, ¶ 22 ("[T]he trial court, in announcing its sentencing decision, is not required to refrain from any mention of the factors that constitute elements of an offense, and the mere reference to the existence of such a factor is not reversible error."). A review of the record of the sentencing hearing, as a whole, confirms that the threat defendant posed to the community was, indeed, the "overriding" factor considered by the court. See *Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22 ("There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court."). Moreover, the court in this case did not impose the maximum sentence like the court did in *Martin*. See *Martin*, 119 Ill. 2d at 462. Instead, the court imposed a sentence that was 10 years below the combined maximum for murder and minimum for the mandatory firearm enhancement, for a total of 75 years. See *People v. Smith*, 2023 IL App (1st) 192187-U, ¶ 43 (stating that the "defendant's 65-year sentence [for first degree murder with a firearm enhancement] was 'substantially less' than the term of natural life he might have received, and thus does not support remand"). We cannot say that defendant has satisfied his burden under the plain-error doctrine of demonstrating that the court clearly placed a significant amount of weight on the allegedly improper aggravating factor. Accordingly, we must honor his forfeiture of the double enhancement claim. See *Hillier*, 237 Ill. 2d at 545.

¶ 35                                B. Excessive Sentence

¶ 36            Defendant argues in the alternative that the trial court imposed an excessive sentence. Specifically, while acknowledging that first degree murder is a "serious and tragic" offense, defendant asserts that "in light of [his] youth, minimal and non-violent criminal conviction history, mental health and substance abuse issues, and clear and obvious potential for

rehabilitation, the trial court abused its discretion in imposing a prison sentence thirty years above the minimum." "[A] trial court has broad discretion in sentencing and should be reversed only when it abuses that discretion." *People v. Patterson*, 217 Ill. 2d 407, 448 (2005).

¶ 37　　　　The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). "The trial court has broad discretionary powers in imposing a sentence because it is generally in a better position than the reviewing court to determine the appropriate sentence by weighing such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* at 528-29. "A sentencing court is not required to give greater weight to [a] defendant's rehabilitative potential than to the seriousness of the offense. [Citation.] In fact, the seriousness of an offense is considered the most important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53. "Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *Hernandez*, 319 Ill. App. 3d at 529.

¶ 38　　　　Here, we cannot say the trial court abused its discretion and imposed an excessive sentence. The court specifically noted it had considered all of the "information related to the defendant's youth and attendant circumstances." Defendant asserts that "it is unclear if the court

gave proper weight to his young age at the time the offenses were committed." However, it is defendant's burden to affirmatively rebut the presumption that the court properly weighed the mitigating evidence, and he has failed to do so with respect to the court's consideration of his age. See *Sauseda*, 2016 IL App (1st) 140134, ¶ 19. The court also noted that defendant's childhood "was very difficult," and it highlighted his "mental health issues." Again, defendant is unable to affirmatively rebut the presumption that the court accorded appropriate weight to these factors. We also find unpersuasive defendant's description of his criminal history as "minimal." In the short span of time between turning 18 and being sentenced in the instant case, defendant had been convicted of one felony burglary, one misdemeanor theft, and two misdemeanor traffic offenses, not to mention the evidence presented at trial and sentencing showing him routinely possessing firearms illegally. Finally, the 16 rule violations defendant committed while in pretrial detention undercuts his claim that he has "obvious potential for rehabilitation." In light of the above, we find defendant has failed to demonstrate that the court failed to properly weigh the applicable mitigating evidence. Accordingly, we reject defendant's argument that the court imposed an excessive sentence.

¶ 39                                    III. CONCLUSION

¶ 40            For the reasons stated, we affirm the trial court's judgment.

¶ 41            Affirmed.